Jeffrey James WORDEN, Petitioner,

v.

Barry McLEMORE, Respondent.

No. 00–71419.

United States District Court,
E.D. Michigan,
Southern Division.

April 22, 2002.

Marla McCowan, Michigan State Appellate Defender Office, Detroit, MI, for Petitioner.

Janet Van Cleve and Laura G. Moody, Michigan Department of Attorney General Habeas Corpus Division, Lansing, MI, for Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND ORDER GRANTING PARTIAL CERTIFICATE OF APPEALABILITY

COHN, District Judge.

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Jeffrey James Worden (Petitioner), is challenging the constitutionality of his 1996 conviction for possession with intent to deliver more than 50 but less than 225 grams of cocaine. Petitioner is currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan. For the reasons set forth below, the Court will deny the petition.

### II. Facts

On September 22, 1994, Petitioner was arrested by the St. Clair County Sheriff's Department on a weapons offense, and was subjected to a custodial interrogation. Petitioner, who at the time he was arrested was the subject of an on-going drug trafficking investigation by the Sheriff's Department, requested an attorney at one point during the interrogation. Despite this request, the deputy continued to question him. As a result of the interrogation, the deputy elicited information regarding Petitioner's involvement in drug sales. Based upon this information, the Sheriff's Department obtained a search warrant for Petitioner's van. While executing the warrant, the deputies seized approximately 137 grams of cocaine from the van.

### III. Procedural History

Following a jury trial in St. Clair County Circuit Court, Petitioner was convicted of possession with intent to deliver between 50 and 225 grams of cocaine. On February 23, 1996, Petitioner was sentenced to fifteen to forty years imprisonment.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I. The trial court erred in admitting the cocaine into evidence because its discovery was not inevitable.

II. Where the prosecutor presented other evidence to support his theory, the trial judge erred by allowing introduction of Mr. Worden's uncharged drug activity.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished decision. *People v. Worden,* No. 193522, 1997 WL 33330867 (Mich.App. Dec. 9, 1997).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, presenting the following claims:

I. Where the trial judge found that Mr. Worden's statement was extracted in violation of his state constitutional and Fifth Amendment right to counsel, he erred by failing to suppress the cocaine which was a "fruit" of the illegal confession.

II. Mr. Worden was deprived of his due process right to a fair trial where the prosecutor was permitted to introduce evidence of his unrelated cocaine transactions in Texas and Ohio. The trial judge violated his duty to control the proceedings by denying the mistrial motion made in response to the admission of the "bad acts" evidence.

III. Where Mr. Worden was charged with possession with intent to deliver cocaine, and he disputed the intent to deliver, the prosecutor violated the discovery order as well as Mr. Street's constitutional due process and confrontation rights, by failing to disclose evidence that police discovered a cutting agent in the same vehicle where they found the cocaine.

IV. The trial judge deprived Mr. Worden of his Sixth Amendment and state constitutional rights to a fair trial by a properly instructed jury where he refused to instruct the jury on cocaine "use."

The Michigan Supreme Court denied the application for leave to appeal. *People v. Worden*, No. 111160, 459 Mich. 897, 589 N.W.2d 277 (Mich. Nov. 3, 1998).

Petitioner then filed a petition for certiorari in the Supreme Court, which was denied on April 19, 1999. *Worden v. Michigan*, 526 U.S. 1073, 119 S.Ct. 1472, 143 L.Ed.2d 556 (1999).

Thereafter, Petitioner, through counsel, filed the petition for a writ of habeas corpus, presenting the following claims:

I. Where the trial judge found that Mr. Worden's statement was extracted in violation of his Fifth Amendment right to counsel, his decision to not suppress the cocaine that was a fruit of the illegal confession was contrary to, and an unreasonable application of, United States Supreme Court precedent.

II. Where Mr. Worden was charged with possession with intent to deliver cocaine, and he disputed the intent to deliver, the prosecutor violated the discovery order as well as Mr. Worden's constitutional due process and confrontation rights, by failing to disclose evidence that police discovered a cutting agent in the same vehicle where they found the cocaine.

III. The trial judge deprived Mr. Worden of his Sixth Amendment and state constitutional rights to a fair trial by a properly instructed jury where he refused to instruct the jury on cocaine "use."

## IV. *Analysis*

### A. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), codified at 28 U.S.C. § 2241, *et seq.*, altered the standard of review a federal court must apply when reviewing an application for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply.

28 U.S.C. § 2254(d) imposes the following standard of review that a federal

court must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision is contrary to or involves an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429 (6th Cir.1998). Additionally, the Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court tells a federal court to analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 1521. The Supreme Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 1521–22.

**B.** *Denial of Petitioner's Motion to Suppress Cocaine*

This case presents the unfortunate circumstance where the Court is constrained

---

1. 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

by the limited standard of review afforded it on habeas review to deny relief on an issue that the Court believes the state court decided incorrectly. The issue is Petitioner's claim that the trial court erred in denying his motion to suppress cocaine evidence derived from a confession obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Petitioner's claim arises in the following context.

### 1.

On September 22, 1996, following his arrest for a firearms offense, deputies with the St. Clair County Sheriff's Department interrogated Petitioner. During the interrogation, Petitioner requested an attorney. The deputies, however, did not terminate the interrogation. Instead, they continued a lengthy interrogation. Thereafter, based upon information obtained from Petitioner after he invoked his right to counsel, the deputies obtained a warrant to search Petitioner's van in which they recovered approximately 137 grams of cocaine and a cutting agent.

Prior to trial, Petitioner filed a motion to suppress his statement to the deputies as violative of his Fifth Amendment right to counsel, and a motion to suppress the cocaine as a "fruit of the poisonous tree." [2] Following a hearing on the motion, the trial court suppressed the statements to the deputies because the trial court found that Petitioner invoked his right to counsel, that he did not initiate further communications with the police, and the deputies continued to interrogate him in violation of

*Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Thereafter, following a separate hearing regarding the motion to suppress the cocaine, the trial court denied the motion on the ground that Petitioner's statements to the deputies were voluntary and that the evidence obtained as a result of these voluntary statements, consequently, was not the fruit of a poisonous tree.

On appeal, the Michigan Court of Appeals held that the trial court did not err in denying Petitioner's motion to suppress, finding that, although the prophylactic rules of *Miranda* were violated, no constitutional violation requiring suppression of the cocaine had occurred. The Michigan Court of Appeals reasoned, in pertinent part:

Defendant's first argument is that the trial court erred in failing to suppress the evidence found in the van because the evidence was the fruit of an illegal confession. Defendant contends that his Fifth Amendment right to counsel was violated at the custodial interrogation where the police failed to cease questioning when defendant requested an attorney. Defendant. then contends that because his Fifth Amendment right to counsel was violated, all evidence seized as a result of his police statement must be suppressed as "fruit of the poisonous tree." [footnote omitted]

The critical question to be determined in this case is whether any Fifth Amendment right to counsel had been implicated at the custodial interrogation. Based on the United States Supreme Court's pronouncements that the right to coun-

**2.** The Supreme Court announced the "fruit of the poisonous tree" doctrine in *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *Wong Sun* involved a Fourth Amendment violation—police arrested defendants in their homes without probable

cause or reasonable grounds. In connection with those arrests, police found narcotics. The Supreme Court held that the narcotics derived from the illegal arrests must be excluded from trial as "fruit of the poisonous tree."

sel established by *Miranda* is not constitutionally based, but merely a measure to ensure that the right against compulsory self-incrimination is protected, we must conclude that no constitutional right to counsel has been implicated in this case. Therefore, the trial court did not err in not suppressing the evidence seized as result of defendant's police statement.

There is no question in this case that defendant was subjected to a custodial interrogation, thus triggering the need to give *Miranda* warnings to defendant.... Further, it is undisputed that defendant requested an attorney during his interrogation, that the police officer failed to honor defendant's request, that the officer continued to interrogate defendant, and that defendant did not initiate further questioning. Therefore the bright-line rule of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), was implicated. Under the rule of *Edwards,* police officers must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during a custodial interrogation. [footnote omitted]. Because the officer in this case did not cease questioning and because defendant did not initiate further questioning, the trial court properly ordered that defendant's statement was not admissible. *Id.,* at 487, 101 S.Ct. 1880; *McNeil v. Wisconsin,* 501 U.S. 171, 177, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

However, we must determine whether the evidence obtained as a result of the statement must also be suppressed as "fruit of the poisonous tree." In *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the Supreme Court made clear that the right to counsel established in *Miranda* is not a right protected by the federal constitution, but is one of a series of recommended procedural safeguards set up to insure that the right against compulsory self-incrimination is protected. Accord, *Michigan v. Tucker,* 417 U.S. 433, 443–444, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974); *Withrow v. Williams,* 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). Moreover, the Supreme Court in *Davis,* at 471, 114 S.Ct. 2350, stated that the prohibition on further questioning, like other aspects of *Miranda,* is not required by the Fifth Amendment's prohibition against compulsory self-incrimination, but "is instead justified only by reference to its prophylactic purpose," citing *Connecticut v. Barrett,* 479 U.S. 523, 528, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987)....

Accordingly, there is no constitutional violation in this case as argued by defendant. The police officer's failure to honor defendant's request for an attorney at the custodial interrogation was a violation of the bright-line rule of *Edwards,* but that rule is not constitutionally based. Rather, the prohibition on further questioning is justified only by reference to the prophylactic purpose of *Miranda. Davis, supra,* at 471, 114 S.Ct. 2350. As more fully explained below, because there is no constitutional violation with respect to defendant's police statement, the "fruit of the poisonous tree" doctrine does not apply.

. . . . .

... Defendant relies on *State v. Harris,* 199 Wis.2d 227, 544 N.W.2d 545 (1996), in which the Wisconsin Supreme Court held that a police-initiated interrogation conducted after a suspect unambiguously invokes the right to have counsel present during the questioning constitutes the violation of a constitutional right. The court in *Harris* held that the violation of the rule in *Edwards* triggers the fruit of the poisonous tree doctrine requiring suppression of the fruits of the

constitutional violation. Given the United States Supreme Court's clear statements that the *Miranda* right to counsel is not constitutionally based, we cannot agree with the court in *Harris* that the "fruit of the poisonous tree" doctrine is applicable where there is a violation of *Edwards.* Our understanding of the Supreme Court's rulings in this respect is that the "fruit of the poisonous tree doctrine" does not apply where there is an *Edwards* violation.

Accordingly, we hold that the trial court did not err in denying defendant's motion to suppress the evidence as a result of his illegally obtained confession. Because the confession was obtained only in violation of the prophylactic right to counsel rule in *Miranda,* but was not a constitutional violation of the right to counsel, the "fruit of the poisonous tree" doctrine does not apply and the evidence obtained as a result of defendant's police statement did not have to be suppressed.

*People v. Worden,* 1997 WL 33330867, *1–3.

### 2.

■ The question the Court must decide is whether the Michigan Court of Appeals' decision that the fruit of the poisonous tree doctrine does not apply to *Miranda* violations was contrary to or an unreasonable application of Supreme Court precedent.[3] To answer this question, the Court must decide whether clearly established Federal law governing the issue existed at the time Petitioner's conviction became final. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495 (holding that the statutory phrase "clearly established Federal law, as determined by the Supreme Court" refers to "the holdings, as opposed

to the dicta, of this Court's decisions *as of the time of the relevant state-court decision*") (emphasis supplied).

In *Miranda,* the Supreme Court left for another day the question whether the fruit of the poisonous tree doctrine applies to *Miranda* violations. *Miranda,* 384 U.S. at 545, 86 S.Ct. 1602 (White, J. dissenting). That day has yet to come. *See Patterson v. United States,* 485 U.S. 922, 922–23, 108 S.Ct. 1093, 99 L.Ed.2d 255 (1988) ("In *Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), this Court expressly left open the question of the admissibility of physical evidence obtained as a result of an interrogation conducted contrary to *Miranda.*") (White, J., *dissenting from the denial of cert.*).

The Supreme Court's decision in *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), does not alter this conclusion. In *Dickerson,* the Supreme Court held that *Miranda* is a constitutional decision. *Id.* at 431–32, 120 S.Ct. 2326. Recognizing that the language in Supreme Court decisions issued subsequent to *Miranda* "supports the view" that the "protections announced in *Miranda* are not constitutionally required," the Supreme Court, nevertheless, held that *Miranda* is "replete with statements indicating that the majority thought it was announcing a constitutional rule." 530 U.S. at 438–39, 120 S.Ct. 2326.

The Michigan Court of Appeals' decision is at odds with *Dickerson* in that *Dickerson* clearly holds that *Miranda* is a constitutional decision and the Michigan Court of Appeals reached the opposite conclusion. Respondent argues that *Dickerson* does not apply to Petitioner's case because it was decided after his conviction became final. This Court need not decide whether

---

**3.** Petitioner does not dispute the finding that, despite the *Edwards* violation, his statement

to police was voluntarily made.

*Dickerson* applies retroactively to Petitioner's case and thereby constitutes "clearly established Federal law, as determined by the Supreme Court of the United States" applicable to Petitioner's claim, because *Dickerson* does not resolve the question upon which this case pivots—whether the fruits doctrine applies to physical evidence derived from a *Miranda* violation. Indeed, disagreement and confusion among federal and state courts regarding the appropriate resolution of this issue survives *Dickerson. See e.g., U.S. v. Sterling,* 283 F.3d 216 (4th Cir.2002) (holding that "although *Dickerson* held *Miranda* to be of constitutional significance, *Miranda* only held that certain warnings must be given before a suspect's *statements* made during custodial interrogation can be admitted into evidence" and that the distinction between statements and derivative evidence therefore survives *Dickerson* ) (emphasis in original); *U.S. v. DeSumma,* 272 F.3d 176, 180 (3rd Cir.2001) (reading *Dickerson* as preventing the use of a non-Mirandized statement rather than the introduction of derivative evidence); *U.S. v. Faulkingham,* 156 F.Supp.2d 60, 70–71 (D.Me.2001) (suppressing derivative evidence obtained as a result of a *Miranda* violation); *State v. Hill,* 146 N.H. 568, 781 A.2d 979, 984 (2001) (holding evidence derived as a result of *Miranda* violation inadmissible unless it would have otherwise been inevitably discovered). Thus, there is no clearly established Federal law addressing this issue which the state court could be found to have applied unreasonably.

In its decision affirming Petitioner's conviction, the Michigan Court of Appeals failed to apprehend the extent of disharmony among state and federal courts addressing the applicability of the fruits doctrine to *Miranda* violations. The Michigan Court of Appeals also fell short in its failure to acknowledge the ambiguity attendant to the characterization of *Miranda* as prophylactic rather than constitutional. Because of such shortcomings, however, it does not mean that a writ necessarily issue. *See Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir.2002) (a federal court on habeas corpus review is "authorized by Section 2254(d) to review only a state court's 'decision' and not the written opinion explaining that decision"); *Cruz v. Miller,* 255 F.3d 77, 86 (2d Cir. 2001) (holding that a federal habeas corpus is "determining the reasonableness of the state courts" "decision" 28 U.S.C. § 2254(d)(1), not grading their papers.... Although sound reasoning will enhance the likelihood that a state court's ruling will be determined to be a "reasonable application" of Supreme Court law ... deficient reasoning will not preclude AEDPA deference). The simple fact guiding the Court's decision is that the Supreme Court has not dispositively spoken on the issue. Thus, though the Court finds the Michigan Court of Appeals' reasoning fundamentally flawed, the Court cannot say that its *decision* was an unreasonable application of Supreme Court precedent, where clearly established Federal law on the issue did not and does not exist.

While the Court is constrained to deny habeas relief, the Court is troubled by this conclusion and its potential ramifications in police investigatory practices. The deputies in this case ignored the clear mandate of *Edwards,* itself derivative of *Miranda*—that questioning must cease after a suspect invokes his right to counsel. The decision not to exclude fruits obtained as a result of an *Edwards* violation invites law enforcement officers to ignore *Miranda* and *Edwards,* where they have undertaken a cost-benefit analysis and determined that the risk of having a confession excluded because of a *Miranda* violation is outweighed by the benefit of the admission of inculpatory evidence borne of that poisonous tree. The Court therefore believes

that failing to exclude the fruits of a *Miranda* violation renders *Edwards* a right affording little protection. However, it is not within the province of the Court to grant habeas corpus relief on this basis. It remains to be seen if and when the Supreme Court will address the uncertainty regarding the admissibility of evidence derived from a *Miranda* violation that remains after, and was perhaps magnified by, *Dickerson*. However, because the Supreme Court has not yet definitively addressed the issue, the decision to admit derivative evidence was not contrary to or an unreasonable application of clearly established Federal law.

### C. *Due Process Claim*

Petitioner argues that he is entitled to a writ of habeas corpus because the prosecutor violated a discovery order, and Petitioner's constitutional due process and confrontation rights by failing to disclose evidence that police discovered a cutting agent in the same vehicle where they found the cocaine.

The last state court to issue a reasoned opinion regarding the claim, the Michigan Court of Appeals, stated, in pertinent part:

Defendant next argues that the prosecutor violated the discovery order and violated his constitutional due process and confrontation rights by failing to disclose evidence that police discovered a cutting agent in the same van where they found the cocaine. On the first day of trial, defense counsel objected to the prosecutor's intention to introduce evidence of a cutting agent found by the police during their search of defendant's van. The trial court permitted the prosecutor to introduce evidence of the cutting agent. Before trial, defendant requested discovery of any report produced by or for an expert witness intended to be called at trial by the prosecutor and a description of and an opportunity to inspect any tangible physical evidence that the pros-

ecutor intended to introduce at trial. *See* MCR 6.201. We find that the prosecutor adequately complied with the discovery order in this case. The police report given to defense counsel, under the heading of "PROPERTY TAGS/EVIDENCE" states that tag number 94–371 was a "gallon sized zip lock plastic baggie with a small amount of off-white substance within (did not field test positive for any illegal controlled substance which [the police officer] tested for). This was located inside of a fire box, which was to the rear area of the above white van." At trial, after defense counsel objected to the introduction of the cutting agent, the prosecutor explained that he had become involved in the case only in the week before trial. The prosecutor explained that he had the officer thoroughly check the substance found in the baggie the day before trial. It was then that the prosecutor learned that the substance was actually inositol, which is not an illegal substance. The prosecutor also stated that he had received the final report on the substance on the first day of trial, and that he gave the report to defense counsel at the same time.

Because the police report shows that the baggie did not contain an illegal substance and was described as an off-white substance that did not test positive for any illegal controlled substance, we conclude that the prosecutor did not violate the discovery order. The police report clearly indicates that the substance was an off-white substance which did not contain any illegal controlled substances. Moreover, as soon as the prosecutor knew of the exact nature of the substance, he reported it to defense counsel. Accordingly, we find that the prosecutor did not violate the discovery order in this case, and the trial court properly declined to suppress the evidence of the inositol at trial.

*People v. Worden,* 1997 WL 33330867, *3–4.

■ It is well-established that " 'federal habeas corpus relief does not lie for errors of state law.' " *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (*quoting Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). Petitioner has failed to show that the state court's finding that the prosecutor did not violate a discovery order was contrary to or an unreasonable application of Supreme Court precedent. Petitioner also has failed to show that the state court's decision that the prosecutor's conduct did not violate his due process rights or his right to confrontation was contrary to or an unreasonable application of Supreme Court precedent.

## D. *Jury Instruction Regarding Misdemeanor Offense*

Finally, Petitioner claims that he is entitled to habeas corpus relief because the trial court judge declined to instruct the jury on the offense of cocaine "use."

The Michigan Court of Appeals denied Petitioner's claim regarding jury instructions, as follows:

As his last issue, defendant argues that the trial court erred in failing to instruct the jury on unlawful use of cocaine as a lesser offense of possession with intent to deliver.

Defendant requested that the trial court give an instruction on the misdemeanor offense of unlawful use of cocaine as a lesser offense of possession with intent to deliver cocaine. The trial court denied the request, ruling that there was no competent evidence to support an instruction on unlawful cocaine use. Defendant counters that there was a sufficient evidentiary basis from Todd Wilson's testimony to give the requested misdemeanor instruction of unlawful co-

caine use. Wilson testified at trial that he and defendant frequently used drugs together and that defendant retrieved cocaine from his van which they used together.

With respect to jury instructions, the rule for giving a misdemeanor lesser included offense is: (1) there must be a proper request for the misdemeanor instruction, (2) there must be an appropriate relationship between the charged offense and the requested misdemeanor, (3) the requested misdemeanor must be supported by a rational view of the evidence, and (4) the requested instruction must not result in undue confusion or some other injustice. *People v. Stephens,* 416 Mich. 252, 330 N.W.2d 675 (1982). In *People v. Lucas,* 188 Mich. App. 554, 582, 470 N.W.2d 460 (1991), this Court held that the misdemeanor offense of unlawful use fails to bear an appropriate relationship to the greater offense of possession with intent to deliver. This Court noted that an appropriate relationship exists if the greater and lesser offenses relate to the protection of the same interests and they are related in an evidentiary sense such that proof of the misdemeanor is necessarily presented as proof of the greater charged offense. *Id.* This Court further held that proof of drug use is never necessarily presented as part of the proofs supporting possession with intent to deliver. . . .

Accordingly, the trial court did not err in refusing to give defendant's requested misdemeanor instruction of unlawful use of cocaine because there is not an appropriate relationship between the offenses of possession with intent to deliver and unlawful use.

*People v. Worden,* 1997 WL 33330867, *5–6.

■ The Court of Appeals for the Sixth Circuit has held that where the state court

has "reviewed a defendant's request for a lesser included offense instruction and concluded that it was not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law." *Bagby v. Sowders,* 894 F.2d 792, 795 (6th Cir.1990). Petitioner has failed to establish that the Michigan Court of Appeals decision that an instruction regarding the misdemeanor offense of cocaine use was not warranted under Michigan law was contrary to or an unreasonable application of Supreme Court precedent.

### V. *Conclusion*

The Court is constrained by the narrow standard of review afforded a federal court on habeas corpus review, particularly with regard to Petitioner's first claim, to deny the petition in this case. Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and this case is **DISMISSED.**

### VI. *Certificate of Appealability*

 Before Petitioner can appeal the Court's decision, a certificate of appealability under 28 U.S.C. § 2254(c)(1)(A) and Fed. R.App. P. 22(b) must issue. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In *Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000), the United States Supreme Court held that where a petition is rejected on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 120 S.Ct. at 1604. Where the petition is dismissed on procedural grounds, petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different matter or that the issues presented were

'adequate to deserve encouragement to proceed further.'" 120 S.Ct. at 1603–04 (quoting *Barefoot v. Estelle,* 463 U.S. 880, 898 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). In this Circuit, the Court must make an individualized determination of each claim raised in the petition in considering whether or not to grant a certificate of appealability. *See Murphy v. State of Ohio,* 263 F.3d 466 (6th Cir.2001) (per curiam).

Here, given the Court's obvious concern with denying Petitioner relief on his first claim regarding the denial of his motion to suppress the cocaine, the Court finds that reasonable jurists would debate whether the Court's assessment of Petitioner's claim was correct. Although the better practice is to wait until Petitioner requests a certificate of appealability, see *Brown v. United States,* 187 F.Supp.2d 887, 890 (E.D.Mich.2002), the Court **GRANTS** a certificate of appealability on only this claim.

**SO ORDERED.**